IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-10-D

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| CHRISTOPHER WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

On July 27, 2020, Christopher Williams ("Williams" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582), filed records in support, and moved for appointment of counsel [D.E. 107]. On December 26, 2020, Williams, through counsel, moved again for compassionate release and filed a memorandum and records in support [D.E. 112, 113, 114]. On January 4, 2021, the government responded in opposition [D.E. 118]. As explained below, the court denies Williams's motion.

I.

On March 12, 2019, without a plea agreement, Williams pleaded guilty to distribution of a quantity of cocaine base (crack) (counts one and three); possession with intent to distribute a quantity of cocaine base (crack) (count four); maintaining a place for the purpose of manufacturing, distributing, and using cocaine base (crack) and cocaine, and aiding and abetting (count seven); and felon in possession of ammunition (count eight). See [D.E. 23, 40]. On July 1, 2019, the court held a sentencing hearing, adopted the facts set forth in the Presentence Investigation Report ("PSR"), and sustained Williams's objection. See [D.E. 69, 72, 73]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court

calculated Williams's total offense level to be 17, his criminal history category to be V, and his advisory guideline range to be 46 to 57 months' imprisonment. See [D.E. 73] 1. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Williams to 57 months' concurrent imprisonment on each count, for a total of 57 months' imprisonment. See [D.E. 72] 3. Williams did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious

2

medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether

---

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

"extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

The government concedes that Williams has exhausted his administrative remedies. See [D.E. 118] 4; United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Williams's claim on the merits.

Williams seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Williams cites the COVID-19 pandemic, his race, his recovery from COVID-19, and his chronic obstructive pulmonary disease ("COPD"), diabetes, heart conditions, hypertension, hyperlipidemia, and sleep apnea. See [D.E. 107] 2; [D.E. 107-1]; [D.E. 113] 4–5; [D.E. 114]. Williams also cites his rehabilitation efforts, his release plan, and that he served over 60% of his sentence. See [D.E. 107] 1–2; [D.E. 113] 5–6.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Williams states that he suffers from COPD, diabetes, heart conditions, hypertension, hyperlipidemia, and sleep apnea,

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Williams serves his sentence. The same holds true were Williams to contract COVID-19 again. Accordingly, reducing Williams's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Williams's health conditions, rehabilitation efforts, and release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Williams's sentence. See Kibble, 2021 WL 1216543, at *3–4; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Williams is 61 years old and engaged in serious criminal conduct in 2018. See PSR ¶¶ 14–19. Williams and his confederates became the targets of a federal narcotics investigation after the Vance County Sheriff's Office received countless complaints of drug sales, drug use, prostitution, sexual assaults, robbery, and murder at their residence. See id. ¶ 14. Williams sold cocaine base (crack) to a confidential informant on at least three occasions. See id. Searches of Williams's "trap house" uncovered several illegal and stolen firearms, as well as several boxes of ammunition, including twenty-two .38 caliber rounds. See id. ¶¶ 15–18. Moreover, Williams is a violent recidivist with convictions including, but not limited to, simple worthless check; maintaining a vehicle, dwelling, or place for controlled substances (two counts); possession of drug paraphernalia (two counts); possession with intent to sell or deliver cocaine; sale and delivery of cocaine;

6

possession of marijuana; possession with intent to manufacture, sell, or deliver cocaine; simple assault; and assault inflicting serious injury. See id. ¶¶ 24–39. Unlike most defendants and in defiance of recidivism statistics, Williams's criminal activity escalated in his forties and fifties. See id. Williams also has a history of violating probation. See id. Furthermore, the BOP classifies Williams as a "Medium" risk for recidivism and violence. See [D.E. 118-1] 1. Nonetheless, Williams has taken some positive steps while incarcerated. See [D.E. 107] 1–2; [D.E. 113] 5–6.

The court has considered Williams's exposure to COVID-19, his recovery from COVID-19, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Williams, the section 3553(a) factors, Williams's arguments, the government's persuasive response, and the need to punish Williams for his continued serious criminal behavior, to incapacitate Williams, to promote respect for the law, to deter others, and to protect society, the court declines to grant Williams's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Williams's request for home confinement, Williams seeks relief under the CARES Act. See [D.E. 107, 112, 113]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No.

7

4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Williams's request for home confinement.

II.

In sum, the court DENIES Williams's motion for compassionate release [D.E. 107, 112], and DISMISSES Williams's request for home confinement.

SO ORDERED. This _5_ day of April 2021.

JAMES C. DEVER III
United States District Judge